UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AKS TRADE COMPANY, LLC,<br><br>                              Plaintiff,<br><br>                  -v.-<br><br>AMERICAP DIRECT CORPORATION,<br>DAVID AULT, and MODEL FINANCIAL<br>SERVICES LLC,<br><br>                              Defendants. | 21 Civ. 9364 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff AKS Trade Company, LLC brought suit against Defendants Americap Direct Corporation ("Americap"), David Ault, and Model Financial Services LLC (together, "Defendants"), asserting claims for breach of contract, fraud, and unjust enrichment stemming from the parties' business dealings related to Plaintiff's intended purchases of a large quantity of gold. In order to secure these purchases from an African supplier, Plaintiff entered into two credit agreements with Americap (the "DLC Agreements"), pursuant to which Americap agreed to extend Plaintiff documentary letters of credit ("DLCs") in exchange for cash deposits.

Now before the Court is Plaintiff's motion to compel Americap to arbitrate the claims asserted against it in this matter. The parties agree that Plaintiff's claims against Americap are subject to arbitration clauses contained in the DLC Agreements. However, the parties dispute the proper seat for this arbitration. Plaintiff argues that because the DLC Agreements do not set the place of arbitration, Section 4 of the Federal Arbitration Act (the "FAA"), 9

U.S.C. § 4, requires this Court to order the arbitration to take place within the Southern District of New York. Americap, on the other hand, maintains that the parties entered a third contract (the "Escrow Agreement"), which contains a forum selection clause mandating that the arbitration take place in the Eastern District of California, and to that end requests dismissal of this action or transfer to that district. Because the Escrow Agreement's forum selection clause encompasses some, if not all, of Plaintiff's claims against Americap, the Court grants Americap's request to transfer this action to the Eastern District of California.

## BACKGROUND

### A.      Factual Background

In August 2021, Plaintiff entered into two separate agreements with Americap, whereby Americap was to provide two DLCs, one for $25 million and the other for $50 million, to assist Plaintiff in securing purchases of gold. (Dkt. #41-1 at 1, 41-2 at 1).[1] These contracts required Plaintiff to pay Americap deposits of $150,000 and $175,000 (totaling $325,000) for the DLCs, which deposits would be refundable if Americap failed to obtain the DLCs from the issuing bank. (Dkt. #41-1 at 1, 41-2 at 1). Plaintiff and Americap also entered into the Escrow Agreement, dated August 4, 2021, and executed by the parties

---

[1]    Both Plaintiff and Americap have submitted competing versions of the DLC Agreements. (*Compare* Dkt. #38-2, 38-3, *with* Dkt. #41-1, 41-2). Despite the differences among the parties' versions, including with respect to the dates on which they were executed, the arbitration clauses are identical across all of the DLC Agreements submitted by the parties. Because Americap's versions of the agreements appear to be fully executed, while Plaintiff's versions are either not fully executed or contain open items, the Court's citations to the DLC Agreements refer to those submitted by Americap.

on August 18, 2021, empowering an agent to hold Plaintiff's deposits in escrow until Plaintiff accepted the DLCs. (*See generally* Dkt. #41-3 (the "Escrow Agreement")).[2]

According to Plaintiff's Complaint (the "Complaint" or "Compl." (Dkt. #9)), on or about August 13, 2021, two of Plaintiff's agents had a phone call with David Ault, the individual who introduced Plaintiff to Americap and charged a nominal fee for arranging the DLC Agreements between the parties. (Compl. ¶¶ 14-15). During this call, Ault informed Plaintiff that he had previously engaged in several successful DLC transactions with Americap and encouraged Plaintiff to bypass the escrow agent to avoid unnecessary expense and delay. (*Id.* at ¶¶ 16-17). In reliance on Ault's advice, Plaintiff wired the $325,000 deposit directly to Americap. (*Id.* at ¶ 18). To date, Americap has neither secured the DLCs nor refunded Plaintiff's deposits. (*Id.* at ¶¶ 19, 22). For this harm, Plaintiff brings claims for breach of contract against Americap (*id.* at ¶¶ 25-28), fraud against Ault and his company, Model Financial Services LLC (*id.* at ¶¶ 29-33), and unjust enrichment against all Defendants (*id.* at ¶¶ 34-35).

B.   **Procedural Background**

Plaintiff filed the Complaint in this action on November 11, 2021. (Dkt. #1). On December 27, 2021, Americap filed a pre-motion letter indicating its intent to file a motion to dismiss, on the bases that venue was improper and

---

[2]   The versions of the Escrow Agreement submitted by the parties appear to be identical. (*Compare* Dkt. #38-1, *with* Dkt. #41-3).

that this case should go to arbitration because the parties had entered into a mandatory arbitration agreement, which also contained a mandatory jurisdiction clause setting venue for disputes between the parties as Sacramento, California.  (Dkt. #18).[3]  On January 6, 2022, Plaintiff filed a responsive letter, consenting to arbitrate its claims against Americap, per the arbitration clauses in the DLC Agreements.  (Dkt. #19).  In light of the parties' consent to arbitrate, on January 10, 2022, the Court stayed the matter, pending the outcome of the arbitration proceedings.  (Dkt. #24).

On March 3, 2022, Plaintiff filed a motion to compel arbitration, seeking an order compelling arbitration to take place at the International Chamber of Commerce ("ICC") offices in Manhattan.  (Dkt. #26-29).  On March 16, 2022, Americap filed a letter in opposition to Plaintiff's motion to compel arbitration, invoking the "governing law and jurisdiction clause" in the Escrow Agreement — which provides, in relevant part, that "[e]ach of the parties hereto submits to the exclusive jurisdiction and venue of any state or federal court sitting in the County of Sacramento, California" — to argue that the Court should either dismiss this suit or transfer it to the Eastern District of California.  (Dkt. #34).  On March 22, 2022, Plaintiff filed a reply affirmation in further support of its motion to compel.  (Dkt. #35).  Upon the Court's request, on April 12, 2022, Plaintiff furnished the Court with copies of the DLC Agreements and the Escrow Agreement. (Dkt. #38).[4]  That same day, Americap

---

[3]  Defendants Ault and Model Financial Services LLC have not appeared in this action.

[4]  Plaintiff's version of the $50 million DLC Agreement is dated August 24, 2021, and was executed by representatives from Americap and Plaintiff on August 22, 2021.  (Dkt.

filed an objection to the DLC Agreements submitted by Plaintiff, asserting that the documents were unauthenticated and had been rejected by Americap. (Dkt. #39).  Plaintiff responded on April 13, 2022 (Dkt. #40), after which Americap filed its competing versions of the DLC Agreements (Dkt. #41).[5] Plaintiff has not submitted any further objection to the contracts submitted by Americap.

## DISCUSSION

### The Court Transfers This Action to the Eastern District of California Pursuant to the Forum Selection Clause in the Escrow Agreement

Americap argues that because the parties have contracted to resolve business disputes in Sacramento, California, this Court should either dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(3) or transfer venue pursuant to 28 U.S.C. § 1404(a).  (Dkt. #34 at 3-4).  Plaintiff responds that the arbitration clauses controlling this dispute are found in the two DLC Agreements, while the forum selection clause is found only in the Escrow Agreement.  (Dkt. #40 at ¶¶ 11-12).  What is more, Plaintiff contends that the provisions of the Escrow Agreement do not apply because it eschewed this agreement when it wired its deposit directly to Americap, at the behest of Ault.

---

#38-2).  Plaintiff's version of the $25 million DLC Agreement is dated August 13, 2021, and was executed by an Americap representative on August 16, 2021, but does not contain a signature from Plaintiff.  (Dkt. #38-3).

[5]  Americap's version of the DLC Agreements contain different dates than Plaintiff's.  Americap's version of the $25 million DLC Agreement is dated July 23, 2021, and was executed by an Americap representative on July 23, 2021, and by Plaintiff's representative on August 3, 2021.  (Dkt. #41-1).  Americap's version of the $50 million DLC Agreement is dated August 24, 2021, and was executed by an Americap representative on August 24, 2021, and Plaintiff's representative on August 18, 2021.  (Dkt. #48-2).

(Dkt. #35 at ¶ 10). Contrary to Plaintiff's position, the Court concludes that the forum selection clause in the Escrow Agreement remains live and encompasses at least some of Plaintiff's claims against Americap. It further finds transfer to be the appropriate means to enforce the parties' agreement to submit to exclusive jurisdiction in California.

## A.   The Relevant Contractual Provisions

The forum selection clause at issue is contained in the Escrow Agreement, which is dated August 4, 2021, and was executed by the parties on August 18, 2021. This provision provides, in full:

> This Agreement shall be construed in accordance with and governed by the laws of the State of California. All issues concerning the construction, validity, enforcement and interpretation of this Agreement and the Exhibits hereto shall be governed by, and construed in accordance with, the laws of the State of California. Each of the parties hereto submits to the exclusive jurisdiction and venue of any state or federal court sitting in the County of Sacramento California.

(Escrow Agreement § 9).[6] The Escrow Agreement also contains a merger clause indicating that, "[t]his Agreement, read together with the purchase agreement

---

[6]  Section 2.2 of the Escrow Agreement indicates that the "DLC Purchase Agreement" executed by Plaintiff and Americap is attached as Exhibit A. Neither party has clearly communicated which version of the DLC Agreement was attached to the Escrow Agreement. However, the Court understands Exhibit A to refer to Americap's version of the $25 million DLC Agreement, dated July 23, 2021 (Dkt. #41-1), because it is the only one of the DLC Agreements that pre-dates the Escrow Agreement.

On this point, the Court recognizes that the Escrow Agreement incorporates only one of the two DLC Agreements, but it believes the second DLC Agreement is within the Escrow Agreement's gravitational pull. That is, the Court's analysis of its own jurisdiction, discussed later in this Opinion, suggests that it has at most the ability to grant or deny a motion to compel the parties to arbitrate their disputes concerning the second DLC Agreement. By comparison, a district court in the Eastern District of California would have the jurisdiction to resolve a comparable motion directed at all of

between [Plaintiff] and [Americap], constitutes the entire agreement between the parties with respect to the subject matter hereof." (*Id.*, § 15).

The Escrow Agreement does not contain an arbitration provision; however, both of the DLC Agreements do, and the parties agree that the mandatory arbitration clauses contained therein apply to this case. (Dkt. #18, 19). These arbitration provisions read as follows:

> All disputes and questions whatsoever which arise[ ] between the parties to this agreement and touching on this agreement on the construction or application thereof or any account cost, liability to be made hereunder or as to any act or way relating to this agreement shall be settled by the arbitration in accordance with the arbitration laws of the ICC.

(Dkt. # 41-1 at 7; Dkt. #41-2 at 10). Additionally, both DLC Agreements contain merger clauses establishing that, "[t]his Agreement contains the entire agreement and understanding concerning the subject matter hereof and supersedes and replaces all prior negotiations and proposed agreements, written or oral." (Dkt. # 41-1 at 7; Dkt. #41-2 at 10).

**B.   Analysis**

   **1.   The Forum Selection Clause Governs Plaintiff's Claims**

As a preliminary matter, "interpretive questions — questions about the meaning and scope of a forum selection clause — are resolved under the substantive law designated in an otherwise valid contractual choice-of-law clause." *Martinez* v. *Bloomberg LP*, 740 F.3d 211, 224 (2d Cir. 2014); *accord*

---

the parties' identified disputes, which would promote the efficient use of the parties' and the courts' resources.

*Parness* v. *Eplus*, Inc., No. 20 Civ. 7266 (GBD), 2021 WL 827770, at *2 n.2 (S.D.N.Y. Mar. 4, 2021). As such, the Court will interpret the scope of the Escrow Agreement's forum selection clause under California law.

Plaintiff strenuously contests that the forum selection clause even applies to its claims, arguing instead that it abandoned the Escrow Agreement when it transferred funds directly to Americap, instead of to the appointed escrow agent. (*See* Dkt. #35 at ¶ 10; Dkt #40 at ¶ 10). However, Plaintiff's proffered interpretation contravenes the plain terms of the Escrow Agreement, which provides the governing law and jurisdiction for all issues concerning the construction, validity, enforcement, and interpretation of the Escrow Agreement itself, as well as one of the DLC Agreements.

Under California's statutory rules of contract interpretation, "the mutual intention of the parties as it existed at the time of contracting" governs interpretation. Cal. Civ. Code § 1636. Such intent is to be inferred, if possible, solely from the written provisions of the contract. *See id.*, § 1639. Courts are to use the "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless the parties employ the words in a technical sense or give them a special meaning. *Id.*, §§ 1638, 1644. "Thus, if the meaning a lay person would ascribe to contract language is not ambiguous, we apply that meaning." *Superior Ct. of Alameda Cnty.* v. *Cnty. of Alameda*, 65 Cal. App. 5th 838, 850 (Ct. App. 2021) (quoting *AIU Ins. Co.* v. *Superior Ct.*, 51 Cal. 3d 807, 822 (1990)).

Section 9 of the Escrow Agreement sets forth the governing law and jurisdiction governing disputes between Plaintiff and Americap. In relevant part, Section 9 provides, "[a]ll issues concerning the construction, validity, enforcement and interpretation of this Agreement and the Exhibits hereto shall be governed by, and construed in accordance with, the laws of the State of California." (Escrow Agreement § 9). The next sentence of the provision sets forth that, "[e]ach of the parties hereto submits to the exclusive jurisdiction and venue of any state or federal court sitting in the County of Sacramento, California." Importantly, the Escrow Agreement labels as Exhibit A the "DLC Purchase Agreement" — which, as the Court already explained, *see supra* note 6, is the $25 million DLC Agreement, dated July 23, 2021. (*See id.*, § 2.2; *see also* Dkt. #41-1).

By its clear terms, this provision of the Escrow Agreement provides that all issues concerning the enforcement of the Escrow Agreement and the first DLC Agreement are to be governed by California law, and, further, that all disputes are to be resolved exclusively in Sacramento, California. Here, Plaintiff has brought claims against Americap for breach of contract and unjust enrichment relating to the DLC Agreements. Because these claims relate to the enforcement of the DLC Agreements, they fall, at least in part, under the plain terms of Section 9. Plaintiff's argument that the Escrow Agreement does not govern this dispute misses the mark, because that Agreement provides the governing law and jurisdiction for "all issues concerning the construction, validity, enforcement and interpretation" of *both* the Escrow Agreement and the

9

DLC Agreement appended thereto.  Furthermore, the Escrow Agreement does not provide for the unilateral termination of its provisions.  Instead, Section 7 of the Agreement outlines two triggering events for termination, neither of which is alleged to have occurred here.  (Escrow Agreement § 7).  Accordingly, the Court finds the forum selection clause in the Escrow Agreement to apply to Plaintiff's claims against Americap.[7]

### 2.  Transfer Is Appropriate Under Section 1404(a)[8]

The Court next determines that the appropriate means to enforce the forum selection clause is to transfer this case to the agreed-upon forum under 28 U.S.C. § 1404(a), rather than dismiss it under Rule 12(b)(3).  The Supreme

---

[7]  Plaintiff has not argued that enforcement of the forum selection clause would be unreasonable or unjust, or that the clause was otherwise invalid, and thus the Court does not consider any such basis to invalidate this provision of the Escrow Agreement.

[8]  "[T]he Second Circuit has not yet decided how a district court should proceed when a suit pending before it involves an arbitration agreement which specifies that arbitration should take place outside the court's district."  *Klein* v. *ATP Flight School, LLP*, No. 14 Civ. 1522 (JFB) (GRB), 2014 WL 3013294, at *10 (E.D.N.Y. July 3, 2014) (citation omitted).  Courts have diverged on this issue because Section 4 of the FAA requires arbitration to take place "within the district in which the petition for an order directing such arbitration is filed," but also states that "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement," including a forum selection clause.  *See* 9 U.S.C. § 4.

This Court joins the majority view in finding that it lacks the power to compel the parties to arbitrate in a different jurisdiction.  *See Klein*, 2014 WL 3013294, at *10-11 (outlining the different approaches courts have taken and finding that "it cannot compel arbitration in Georgia"); *J.P. Morgan Sec. Inc.* v. *La. Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 82 (S.D.N.Y. 2010) (adopting majority view "that where the arbitration agreement designates a specific forum, only a district court in that forum may compel arbitration"); *see also, e.g., Haber* v. *Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009) ("When an arbitration clause in a contract includes a forum selection clause, only the district court in that forum can issue a Section 4 order compelling arbitration." (internal quotation marks omitted)); *Ansari* v. *Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005) (holding that, where the parties had agreed to arbitrate in a particular forum, only a district court in the designated forum has authority to compel arbitration under Section 4 of the FAA).  Accordingly, after determining that the forum selection clause covers Plaintiff's claims, the Court transfers this case to the Eastern District of California, which forum may, or may not, thereafter compel the parties to arbitrate in accordance with the relevant provisions of the DLC Agreements.

Court has held in *Atlantic Marine Construction Co.* v. *United States District Court for the Western District of Texas*, that Rule 12(b)(3) "authorize[s] dismissal only when venue is 'wrong' or 'improper' in the forum in which it was brought." 571 U.S. 49, 55 (2013). While Americap argues that venue is improper in this District, the Court is not convinced by Americap's conclusory assertion that "none of the events complained of occurred in New York." (Dkt. #34 at 2). Plaintiff is headquartered in New York, with its principal place of business in this District (Compl. ¶ 5), which leads the Court to believe that at least some portion of the events giving rise to this dispute, including Plaintiff's telephone conversation with Ault and some portion of the contract negotiations between Plaintiff and Americap, occurred within this District.

"Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of … Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine*, 571 U.S. at 59; *see also id.* at 60 (explaining that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*," and that "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system"). Pursuant to Section 1404(a), "[f]or the convenience of parties and witnesses, [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

11

On a motion to transfer under Section 1404(a), a court must engage in a two-part analysis. *See Nat'l Union Fire Ins. Co. of Pittsburgh* v. *Wynn Las Vegas, LLC*, 509 F. Supp. 3d 38, 50 (S.D.N.Y. 2020). *First*, a court must "determine whether the action could have been brought in the proposed transferee forum." *Id.* (citing *Casey* v. *Odwalla, Inc.*, 338 F. Supp. 3d 284, 292 (S.D.N.Y. 2018)). *Second*, a district court evaluates the "private-interest and public-interest considerations to determine whether transfer is appropriate." *Id.* (citing *Atl. Marine*, 571 U.S. at 63). These considerations include:

> [i] the plaintiff's choice of forum; [ii] the convenience of the witnesses; [iii] the location of relevant documents and relative ease of access to sources of proof; [iv] the convenience of the parties; [v] the locus of operative facts; [vi] the availability of process to compel the attendance of unwilling witnesses; [vii] the relative means of the parties; [viii] the forum's familiarity with the governing law; and [ix] trial efficiency and the interests of justice.

*Id.* (citing *Casey*, 338 F. Supp. 3d at 292).

A forum selection clause, however, adjusts the typical Section 1404(a) analysis in three ways: (i) "[p]laintiff's choice of forum merits no weight"; (ii) "a court evaluating a defendant's [Section] 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests"; and (iii) "a [Section] 1404 transfer of venue will not carry with it the original venue's choice-of-law rules — a factor that in some circumstances may affect public-interest considerations." *Atl. Marine*, 571 U.S. at 63–64. "Only under extraordinary circumstances unrelated to the convenience of the parties" should a motion to transfer pursuant to a forum

selection clause be denied. *Id.* at 62. Plaintiff, "as the party defying the forum-selection clause, … bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63.

At the first step of the Section 1404(a) analysis, Americap contends that this case could have been brought in the Eastern District of California because it does all of its business in Sacramento County, California, and because Plaintiff alleges that Ault misled them about the purchase of the DLCs to be obtained by Americap in California. (Dkt. #34 at 2). *See* 28 U.S.C. 1391(a)(2) (authorizing venue in a diversity case in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"). Plaintiff does not contest these facts or otherwise argue that venue would be improper in the Eastern District of California. Furthermore, Plaintiff hinges its motion to compel arbitration in this District entirely on the argument that the Escrow Agreement is inapplicable to its claims against Americap, and thus has not presented any public interest factors that militate in favor of overriding the parties' forum selection clause. Nor does the Court see any basis to conclude that the instant matter may be one of those "exceptional cases" warranting deviation from the parties' agreed-upon forum. *Atl. Marine*, 571 U.S. at 63. Accordingly, the Court finds that the "interest of justice" would be best served "by holding [the] parties to their bargain." *Id.* at 66.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion to compel arbitration in this District and GRANTS Americap's request to transfer this case to the Eastern District of California pursuant to 28 U.S.C. § 1404(a). The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and transfer this action to the United States District Court for the Eastern District of California.

SO ORDERED.

Dated:   April 21, 2022
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge